Joseph R. Glancey, President Judge of the Municipal Court of Philadelphia, on behalf of himself and all other Judges of said Court *v.* Robert P. Casey, Auditor General and Grace M. Sloan, State Treasurer.

Argued April 13, 1971, before President Judge Bowman, and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Manderino, Mencer and Rogers.

*Norman C. Henss,* with him *Robert C. Duffy,* for plaintiffs.

*William H. Smith,* Chief Counsel to the Auditor General, with him *Charles A. Woods, Jr.,* Deputy Attorney General and *J. Shane Creamer,* Attorney General, for defendants.

PER CURIAM OPINION, May 25, 1971:

Plaintiff, the President Judge of the Municipal Court of Philadelphia, brings this action in mandamus on behalf of himself and his fellow judges against the Auditor General and State Treasurer to compel the payment of warrants alleged to cover the judges' proper salaries during the period January 1, 1969, to and including June 30, 1969. During that period, the plaintiffs served as judges of the Municipal Court of Philadelphia, "successor" to the Magistrates' Court, having been duly appointed by the Governor in accordance with the Constitution of 1968. As required by the Constitution of 1968, all had been magistrates in the City of Philadelphia and had been paid by the City of Philadelphia a salary of $12,500 per year, with the chief magistrate receiving $2500 additional, as fixed by the state legislature in the Act of June 15, 1937, P. L. 1743, as amended, 42 P.S. 1138. After their appointments and prior to new legislation, either fixing the new salaries or increasing the old salaries, the plaintiffs submitted vouchers to the defendants requesting compensation at the following rates:

President Judge—$21,000.00 annually, payable $1,-750.00 per month;

Law Judges—$20,000.00 annually, payable $1,666.-67 per month;

Lay Judges—$16,000.00 annually, payable $1,375.-00 per month.

The defendants declined to honor the vouchers as drawn but approved and made payments to the plaintiffs at the rate previously authorized by the Legislature to be paid by the City to the plaintiffs as magistrates. This was done apparently on the basis that the new Constitution provided for payment by the Commonwealth at a rate "as provided by law". *See* Article V, section 16(a). Acts were introduced in the Legislature in 1969, variously amended but ultimately passed as the Act of October 17, 1969, P. L. 259, 17 P.S. 711, which fixed the compensation of the plaintiffs at the rates specified in the vouchers but made the salary effective from July 1, 1969. The complaint prays that the defendants be ordered to pay the vouchers for the period January 1, 1969 through June 30, 1969, "crediting against said vouchers the sums already paid to the Judges for the said period."

Prior to the passage of the Act of October 17, 1969, P. L. 259, 17 P.S. 711, but while it was pending before the Legislature, the plaintiffs brought an action in the Supreme Court of Pennsylvania to direct the defendants to pay the vouchers here in issue. An answer was filed which, in addition to the other matters of defense, pled in paragraph 10 that a bill for the payment of salaries as prayed for in the complaint "had passed the House of Representatives on June 17, 1969, and had passed first consideration in the Senate on July 22, 1969, and (was) presently on second consideration in the Senate." A copy of the Act was attached to the answer. The implication was that there was no

need for such extraordinary judicial action when the Legislature was performing its duty, albeit in a slow process. The Supreme Court of Pennsylvania entered an order on August 18, 1969, "Petition denied". On September 9, 1969, the Senate amended the bill to make its payments begin on July 1, 1969, rather than January 1, 1969. As thus amended, the bill passed and was signed by the Governor on October 17, 1969.

It might be argued that the above decision of the Supreme Court was *res judicata*. It clearly would be but for the intervening amendment and passage of the Act of October 17, 1969, P. L. 259, 17 P.S. 711. It is forcefully argued by defendants that such a decision by the Supreme Court is binding precedent on this Court.

The plaintiff seeks an extraordinary remedy in at least two respects—it asks this Court to declare an Act of the Legislature unconstitutional but not to strike it from the law. It would have the Act continue to operate in all respects but the one here in question and would have this Court substitute January 1 for July 1 in the Act. No precedent has been cited for such a decision nor have we been able to find any. As an alternative to achieve the same result, the plaintiff would have this Court determine that no salary or an inadequate salary had been supplied by the Legislature for the period January 1 to and including June 30, 1969, and to exercise the broad general powers of the judiciary to order the fiscal officers of the Commonwealth to pay judicial salaries which the Legislature had failed to supply in accordance with its constitutional responsibility. No precedent has been cited for this proposition. The case appropriately relied upon by plaintiffs is *Commonwealth ex rel. The Attorney General v. Mathues*, 210 Pa. 372, 59 A. 961 (1904). The report of this case occupies 59 pages in the official re-

ports. Procedurally, it is not unlike the instant case in that it was an action originating in the Common Pleas Court of Dauphin County sitting as the Commonwealth Court. The action was brought for the benefit of the judges of the Commonwealth by the Attorney General of the Commonwealth against the State Treasurer who refused to pay the judges an increase in salary voted by the Legislature and approved by the Auditor General. The Commonwealth Court awarded the writ of mandamus and was sustained by the Supreme Court. The big distinction between the *Mathues* case and the instant case is that in the *Mathues* case, the Legislature had spoken to award the increase and the Court was directing the State Treasurer to comply with the legislative mandate. In the instant case, the plaintiffs would have this Court direct the State Treasurer and the Auditor General to disregard the legislative mandate.

There is substantial precedent for the courts of common pleas to order the county officials to pay reasonable court expenses in the absence of legislation or action by the local authorities. These cases are collected and ably discussed by Justice Allen M. Stearne in *Leahey v. Farrell,* 362 Pa. 52, 66 A. 2d 577 (1949).

The right to this relief can be justified only on the broad grounds of separation of powers and the inherent right of the judiciary. In our opinion, just as the cause may be, the appropriate forum in which it can be resolved in favor of the plaintiffs is the forum selected originally by the plaintiffs, i.e., the Supreme Court of Pennsylvania. The Constitution, in Article V, section 2, provides ". . . in this (Supreme) Court shall repose the supreme judicial power of the Commonwealth". Surely, it should take nothing less than the supreme judicial power of the Commonwealth to direct the Auditor General and the State Treasurer to

pay warrants "provided by law", which law is supplied by the supreme judicial authority itself rather than by the supreme legislative authority, i.e., the Legislature.

Accordingly, the preliminary objection to the plaintiff's complaint in mandamus in the nature of a demurrer is sustained and judgment is entered for the defendants.

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

The Schedule of the Judiciary Article, Article V of the Pennsylvania Constitution, as amended April 23, 1968, provided for substantial changes in the concept, composition and jurisprudential contribution of the minor judiciary of Philadelphia. Section 16(u) of that Schedule eliminated the office of Magistrate in Philadelphia County as of January 1, 1969. Sections 16(e) and 16(h) envisioned the simultaneous creation of the Municipal Court and at the outset, certain former magistrates were to assume the duties of Municipal Court Judges. Pursuant to the constitutionally ordained proclamation by Governor Shafer, the Municipal and Traffic Courts of Philadelphia were created January 1, 1969 and the plaintiffs herein were invested as Municipal Court Judges.

Plaintiffs here were magistrates prior to January 1, 1969. As such, they were compensated by the City of Philadelphia under the provisions of the Act of June 15, 1937, P. L. 1743, as amended, 42 P.S. §1138. With the abolition of the office of magistrate, *there was not statutorial authority to provide for the payment of their salaries.*[1]

---

[1] The Magisterial Districts Act, Act of December 2, 1968, P. L.    , No. 352, §5, 42 P.S. §1305, and the Magisterial Districts Act for Counties of the Second Class, Act of December 2, 1968, P. L.    , No. 359, §5, 42 P.S. §1405 provided for annual salaries paid by the Commonwealth for all magistrates at the rate of three thousand

As Municipal Court Judges, the method and amount of compensation became the responsibility of the Commonwealth. Article V, Section 16(a) of the Constitution provided in part ". . . judges . . . shall be compensated by the Commonwealth as provided by law." The question before us is whether and, if so, to what extent the Legislature has provided for compensation for judges of the Municipal Court. If no legislative provision for compensation has been provided, plaintiffs' irregular remedy would lie in mandamus against the Legislature.

In the Act of October 17, 1969, P. L. 259, 17 P.S. §711.2, the Legislature provided that Municipal Court Judges' annual salaries would be $21,000 for the President Judge; $20,000 for Law Judges; and $16,000 for Lay Judges. This is precisely what is sought here. However, the Act provided further by a separate sentence, that these sums would only relate back to July 1, 1969. Plaintiffs urge this Court to rule so that the salary provisions are retroactive to January 1, 1969, the date of their coming into being as Municipal Court Judges.

The majority has interpreted this request and its merit as follows: "The plaintiff . . . asks this Court to declare an Act of the Legislature unconstitutional but not to strike it from the law. It would have the Act continue to operate in all respects but the one here in question and would have this Court substitute January 1 for July 1 in the Act. No precedent has been cited for such a decision nor have we been able

---

dollars plus the product of the population of his magisterial district times forty cents, not to exceed fourteen thousand dollars, effective January 1, 1969. There can be no doubt that if plaintiffs had remained magistrates their salaries would have been fourteen thousand dollars per year. The result of their elevation in stature and duties to the Municipal Court was, therefore, to increase their workload and decrease their pay.

to find any." It is this interpretation of fact and law with which I cannot agree.

The Statutory Construction Act of May 28, 1937, P. L. 1019, 46 P.S. §501 et seq., in providing for the Constitutional construction of laws in Article IV, Section 55, 46 P.S. §555, asserts: "The provisions of every law shall be severable. If any provision of a law is found by a court of record to be unconstitutional and void, the remaining provisions of the law shall, nevertheless, remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so depend upon, the void provision, that it cannot be presumed the Legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent."

Our Supreme Court has often spoken on the issue of severability of statutory provisions. In *Saulsbury v. Bethlehem Steel Co.*, 413 Pa. 316, 321, 196 A. 2d 664 (1964), through Mr. Justice EAGEN, it said: "In determining the severability of a statute or ordinance, the legislative intent is of primary significance. However, the problem is twofold: The legislating body must have intended that the act or ordinance be separable and the *statute or ordinance must be capable of separation in fact.* The valid portion of the enactment must be independent and complete within itself. See Sutherland, Statutory Construction, Vol. 2 (3d ed. 1943) §§2403, 2404 and cases cited; also Cooley, Constitutional Limitations Vol. 1 (8th ed.) Chapter VII, at 368." (Emphasis original.) See also cases cited in *Saulsbury, supra,* at p. 320.

In the instant case, plaintiffs allege that the Act of October 17, 1969, 17 P.S. §711.2, is unconstitutional

only to the extent that it restricts payments of salaries from the period commencing July 1, 1969. I agree. The Constitution mandates that the Legislature shall provide for the compensation of judges. If it had not done so by P. L. 259, the plaintiffs could have by appropriate legal action moved the Legislature. However, P. L. 259 omits compensatory provision for Municipal Court Judges and they are provided *no salary "by law"* for duty discharged during the period January 1, 1969-July 1, 1969. Neither that Act nor the Act of June 15, 1937 by which magistrates were compensated could provide for their just due as expressed in the original version of the Municipal Court Judge's salary plan.

The legislative history of the Act of October 17, 1969 conclusively shows that the Legislature's failure to provide for salaries from January 1, 1969 to July 1, 1969 was an intentional contravention of Article V, Section 16(a). As the majority points out, the bill as introduced would have made payment retroactive from January 1, 1969. However, on September 9, 1969 the Senate amended the bill to make it effective July 1, 1969. There can be no doubt that *by this amendment the Legislature unconstitutionally declined to provide for payment of salaries "by law" for the period in question.*

The legislative history of the Act also conclusively shows that the retroactivity provision of that Act is severable and distinct from the rest of that section. The amendment of September 9, 1969 demonstrates that the amount of remuneration to be paid for judicial services is separate in nature and independent from considerations of *time* of its commencement. One cannot question that the Legislature could now raise the salaries of Municipal Court Judges, and by so doing it need not change its provision for the initial date of payment of salaries. It is clear to me that the Legisla-

ture intended for the Remuneration Sum provision to be severable and independent of date of initial payment. Apart from this apparent intent that the clauses are to be severable, the Statutory Construction Act, as I have indicated earlier, creates a presumption of intent of severability which makes the plaintiffs' cause irrefutable.

Additionally, this clause is severable *in fact*. Even without it, the remaining provisions of the Act retain their purpose and effect. The interpretation which I give it does not prevent the execution of the remainder within the meaning and purpose of the legislative intent and the Constitutional mandate. Even in lifting the sentence of the section which limits retroactivity to July 1, 1969, the Constitutional mandate calling for compensation for judge's salaries is met. There is no question that if the Act were silent as to the effective date of the commencement of compensation, *the Constitution would relate it back to the creation of the court on January 1, 1969.*

The result I have reached is contrary to the majority's conclusion that "the plaintiffs would have this Court direct the state treasurer and the auditor general to disregard the legislative mandate." *I would direct the state treasurer and auditor general to follow the Constitutional and legislative mandates to pay the judges of the Municipal Court, from its inception, in accordance with the salary scale "provided by law" in the Act of October 17, 1969.*

I would dismiss the preliminary objections and direct defendants to file an answer.

Judge MANDERINO joins in this Opinion.